IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL ASSOCIATION FOR THE )
ADVANCEMENT OF COLORED PEOPLE, )
 )
    Plaintiff, )
 )
v. )
 )
CITY OF PHILADELPHIA )
 ) Civil Action No. 11-6533
    Defendant. )
 )

## AMENDED COMPLAINT

### INTRODUCTORY STATEMENT

1. This civil rights action for declaratory and injunctive relief arises out of the unconstitutional policy of the defendant City of Philadelphia (the "City") that allows advertisements that "propose a commercial transaction" ("Commercial Advertisements") or the City's own advertisements ("City Advertisements") to be displayed at the Philadelphia International Airport ("PHL"), but prohibits those advertisements that do not propose a commercial transaction ("Non-Commercial Advertisements").

2. Plaintiff National Association for the Advancement of Colored People ("NAACP") would like to buy space at PHL for its advertisements. The City's PHL advertising policy (the "Policy"), however, will make it impossible for the NAACP to do so.

3. The City does not have a legitimate reason, let alone a compelling governmental interest, in prohibiting all Non-Commercial Advertisements at PHL. Indeed, the City has in the

past often allowed Non-Commercial Advertisements at PHL, without any harm ever being caused to the City, to PHL, or to the airline passengers and others who use PHL.

4. Plaintiff NAACP asks this Court: (1) to declare that the City's Policy violates the First and Fourteenth Amendments to the U.S. Constitution; and (2) to issue an injunction requiring the City to rescind the Policy and to accept Non-Commercial Advertisements that the NAACP or other organizations wish to place at PHL in the future.

## JURISDICTION

5. This action seeks to vindicate rights protected by the First and Fourteenth Amendments to the United States Constitution, and is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this civil rights action under 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

## VENUE

6. Plaintiff's claim arises in Philadelphia, Pennsylvania, and, therefore, venue properly lies within the Eastern District of Pennsylvania under 28 U.S.C. §1391(b)(2).

## PARTIES

7. Plaintiff NAACP is the nation's oldest, largest, and most widely recognized grassroots-based civil rights organization. The NAACP's principal objective is to ensure the political, educational, social, and economic equality of all persons and to eliminate racial hatred and racial discrimination. The organization has more than a half-million members and

supporters throughout the United States and the world, and is widely considered the nation's premier advocate for civil rights.

8. Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and manages, directs, and controls the Philadelphia International Airport ("PHL") through its Division of Aviation.

## FACTS

9. On April 7, 2011, the NAACP released Misplaced Priorities, a report that explores how much money the United States overspends on incarceration at the expense of education, and outlines specific reforms that states can enact to reverse this trend.

10. The NAACP planned a broad public awareness and education campaign to accompany and highlight the release of this report. As part of that campaign, the NAACP prepared a series of advertisements for display in airports around the country. The purpose of these advertisements is to bring the United State's disproportionate reliance on incarceration to the attention of the public.

11. The NAACP chose PHL as one of its advertising sites, both because Philadelphia is one of the cities highlighted in the Misplaced Priorities report (*see* http://www.naacp.org/pages/philadelphia) and because of the large number of people who use PHL.

12. In January 2011, the NAACP's advertising agent asked the City's Division of Aviation to approve the following advertisement (the "NAACP Advertisement") for placement at PHL:

> Welcome to America, home to
> 5% of the world's people &
> 25% of the world's prisoners.
>
> Let's build a better America together.  NAACP.org/smartandsafe

13. The City rejected the NAACP Advertisement. Upon information and belief, the City did so because of the advertisement's content and/or viewpoint.

14. After the City rejected the NAACP Advertisement, the NAACP filed its initial complaint in this case.

15. In response to the NAACP's initial complaint, the City eventually agreed to allow the NAACP to place the NAACP Advertisement at PHL.

16. The display of the NAACP Advertisement will cause no harm of any kind to the City, PHL, or the airline passengers or others who use PHL.

17. Although the City agreed, under pressure from this litigation, to allow the NAACP Advertisement to be displayed at PHL, the City thereafter, on or around March 2012, adopted its present policy which provides in pertinent part as follows:

- 4 -

## **ADVERTISEMENTS**

1. No person shall post, distribute, or display any Advertisement at the Airport without the express written consent of the CEO and in such manner as may be prescribed by the CEO.

2. The CEO will not accept or approve any of the following Advertisements:

    a) Advertisements that **do not** propose a commercial transaction;

    b) Advertisements relating to the sale or use of alcohol or tobacco products;

    c) Advertisements that contain sexually explicit representations and/or relate to sexually oriented businesses or products; and/or

    d) Advertisements relating to political campaigns.

3. The City shall have the right to post or cause to be posted its own advertising promoting:

    a) Air Service;

    b) The use of Airport related services;

    c) The greater Philadelphia area and economy;

    d) Philadelphia tourism initiatives; and

    e) Other City initiatives or purposes.

18. Prior to the adoption of this new Policy, the City did not have any written policies, procedures, standards, or guidelines regarding advertising at PHL. Instead, upon information and belief, three City employees in the City's Division of Aviation were vested with

the authority and discretion to make decisions for the City concerning which advertisements would or would not be accepted for display in PHL.

19. The new Policy does not define the terms "commercial" or "transaction," or the phrases "commercial transaction" or "propose a commercial transaction." Because the Policy does not define these terms, it fails to enable a reasonable member of the public to know which advertisements are permitted or prohibited under the Policy, and it vests City officials with the unfettered discretion to decide which advertisements to permit or to reject.

20. The City has adopted the Policy even though there is no reason to believe that Non-Commercial Advertisements tend to create any kind of harm or problem for PHL, the City, or the passengers and others who use PHL.

21. Prior to adopting this policy, the City had long accepted a wide variety of advertising, including "non-commercial" advertisements that address issues of public concern and that may be considered controversial. For example, advertisements on display at PHL shortly after the NAACP Advertisement was refused included the following:

    (a) an advertisement for the World Wildlife Federation ("WWF"), captioned "Protecting the Future of Nature," and stating that the WWF "works around the world developing responsible fishing practices";

    (b) a similar WWF advertisement with a picture of two overheated polar bears, stating how "WWF is developing global solutions to reduce carbon

    emissions and helping vulnerable communities, species and habitats adapt to a changing climate";

 (c) another WWF advertisement discussing the organization's efforts to preserve habitats for panda bears in China and the need for doing so;

 (d) an advertisement by the Foundation For A Better Life with a picture of Bishop Desmond Tutu, stating, "His moral compass points to equality. PEACE. Pass It On.";

 (e) a similar advertisement about racial equality from the Foundation For A Better Life, stating "Here's to you, Mr. Robinson," featuring a picture of Jackie Robinson, who broke the color barrier in Major League Baseball;

 (f) an advertisement by the National PTA, captioned, "The School's Janitor Knows Where Your Kid's Desk Is. Do You?" and advocating for parents to "know about your kid's school" and to "know about your kid";

 (g) an advertisement by the National Center for Missing & Exploited Children focusing on places where sexual predators can be found, and discussing the dangers posed by the Internet for children; and

 (h) an advertisement by the USO saying "Support *Our* Troops."

22. None of these, or any other, non-commercial, issue-oriented, educational, and advocacy advertisements caused any harm to the City, PHL, or any passengers using PHL.

- 8 -

23. The City's previous acceptance of these other non-commercial, issue-oriented, educational, and advocacy advertisements demonstrates that the City has no legitimate justification for adopting the Policy and that permitting the display of Non-Commercial Advertisements would not lead to any significant harm to PHL or create any legal issues for the City.

24. The City's Policy concerning advertising at PHL is also in contrast to its policy and practice concerning leafleting at PHL. The City's policy on leafleting at PHL makes clear that non-commercial, issue-oriented, advocacy leafleting is permitted at PHL, subject only to the ordinary time, place, and manner conditions. Thus, under the City's own leafleting policy, if the NAACP sought to hand out leaflets inside PHL containing the exact same language and images as in the NAACP Advertisement, the City would have permitted such leafleting to occur.

25. The NAACP placed an advertisement identical to the NAACP Advertisement on a rolling billboard that was displayed throughout Philadelphia, without incident.

26. The NAACP also successfully placed the advertisement on a billboard operated by a private company along a road leaving PHL, without incident.

27. The City has stated that it previously permitted the display of Non-Commercial Advertisements because it could not fill the advertising spaces with advertisements from paying customers. Accordingly, permitting the display of Non-Commercial Advertisements will generate revenue, not decrease revenue, for the City.

28. Some airports other than PHL permit the display of Non-Commercial Advertisements. These advertisements have not created any kind of harm or problem for those airports, the cities in which they are located, or the passengers and others using those airports.

29. Pursuant to its new Policy, the City is permitted to display City Advertisements that do not propose a commercial transaction, whatever that phrase may mean. Indeed, after adopting the Policy, City Advertisements not proposing a commercial transaction, including advertisements honoring the Red Cross and other non-profit/non-commercial groups, have been placed at PHL.

30. The City's display of City Advertisements will lead to viewpoint discrimination. For instance, under the Policy, the City would apparently be permitted to display an advertisement welcoming a "fracking" convention to the City, but anti-fracking activists would not be permitted to display an advertisement criticizing the fracking industry. As another example, the City would be permitted to display an advertisement extolling the American Red Cross, but critics of the American Red Cross would not be permitted to display an advertisement criticizing that organization.

31. The City previously has contended that its new Policy will bar advertisements like the NAACP Advertisement and the other advertisements discussed above that previously were on display of the walls of PHL.

32. That contention creates further confusion as to what is permitted and not permitted under the Policy. For example, it is unclear why the WWF advertisements discussed

above would not be permissible under the Policy given that the advertisements asked viewers to support the WWF.

33. It is also not clear whether, for example, Exxon Mobile Corporation would be permitted to display an advertisement promoting its care of the environment, but not explicitly promoting the sale of its products.

34. Furthermore, it is unclear whether the NAACP Advertisement would be permissible if it included the statement "join the NAACP today so we can build a better America together," or urged viewers of the advertisement to purchase a t-shirt to support the NAACP.

35. The NAACP would like to place advertisements at PHL in the future like the NAACP Advertisement. If the City is allowed to enforce its Policy, the NAACP will be precluded from doing so.

## CLAIMS

### Unconstitutional Infringement on Freedom of Speech –
### First and Fourteenth Amendments to the United States Constitution and Section 7 of Article 1 of the Pennsylvania Constitution

36. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

37. The City's Policy allowing City Advertisements and Commercial Advertisements at PHL (except those with graphic photographs, profanity or sexually explicit language) while prohibiting Non-Commercial Advertisements is a content-based policy that is not narrowly tailored to promote a compelling government interest, in violation of the First and Fourteenth

- 10 -

14516264.1.LITIGATION 8/2/2012 12:20 PM

Amendments to the United States Constitution and Section 7 of Article 1 of the Pennsylvania Constitution.

38. The City's Policy allowing City Advertisements and Commercial Advertisements (except those with graphic photographs, profanity or sexually explicit language) while prohibiting Non-Commercial Advertisements amounts to viewpoint discrimination, in violation of the First and Fourteenth Amendments to the U. S. Constitution and Section 7 of Article 1 of the Pennsylvania Constitution.

39. The City's Policy allowing City Advertisements and Commercial Advertisements (except those with graphic photographs, profanity or sexually explicit language) while prohibiting Non-Commercial Advertisements is unconstitutionally vague, in violation of the First and Fourteenth Amendments to the U. S. Constitution and Section 7 of Article 1 of the Pennsylvania Constitution.

40. Enforcement of the City's Policy will deprive the NAACP and other organizations and individuals that want to place Non-Commercial Advertisements at PHL of their rights under the First and Fourteenth Amendments to the U. S. Constitution and Section 7 of Article 1 of the Pennsylvania Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff NAACP asks that this Court:

A. Declare that the City's Policy violates the First and Fourteenth Amendments to the U. S. Constitution and Section 7 of Article 1 of the Pennsylvania Constitution;

B.     Issue a permanent injunction: (1) requiring the City to accept and display Non-Commercial Advertisements at PHL on the same basis and on terms no less favorable than those that apply to Commercial Advertisements; (2) prohibiting the City from refusing Non-Commercial Advertisements for PHL except on the same basis as it would reject Commercial Advertisements; and (3) prohibiting the City from refusing advertisements for PHL on the basis of the content or viewpoint of those advertisements;

C.     Award the NAACP costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.     Grant such other relief as the Court deems just and appropriate.

Dated: August 2, 2012.

Fred T. Magaziner (Pa. I.D. No. 23332)
Alexander R. Bilus (Pa. I.D. No. 203680)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-4000
Fax: (215) 994-2222
fred.magaziner@dechert.com
sandy.bilus@dechert.com

_____
Mary Catherine Roper (Pa. I.D. No. 71107)
Christopher Markos (Pa. I.D. No. 308997)
Seema Saifee (*pro hac vice* pending)
American Civil Liberties Foundation of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
Tel: (215) 592-1513 ext. 116
Fax: (215) 592-1343
mroper@aclupa.org
cmarkos@aclupa.org

ssaifee@aclupa.org

Witold J. Walczak (Pa. I.D. No. 62976)
American Civil Liberties Foundation of
Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
Tel: (412) 681-7736
Fax: (412) 681-8707
vwalczak@aclupa.org

Christopher A. Hansen (*pro hac vice*)
Aden J. Fine (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2583
chansen@aclu.org
afine@aclu.org

Seth F. Kreimer (Pa. I.D. No. 26102)
3400 Chestnut St.
Philadelphia, PA 19104
Tel: (215) 898-7447
Fax: (215) 573-2025
skreimer@law.upenn.edu

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Amended Complaint has been served by email upon

        Craig Straw
        City of Philadelphia Law Dept
        1515 Arch St., 14th Fl.
        Philadelphia, PA 19102
        215-683-5448

August 2, 2012.

        /s/ *Mary Catherine Roper*
        Mary Catherine Roper