IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, :<br><br>   Plaintiff, :<br><br>   v. :<br><br>CITY OF PHILADELPHIA, :<br><br>   Defendant. : | CIVIL ACTION<br><br>NO. 11-6533 |

### ORDER

**AND NOW**, this _____ day of _____, 2012, upon consideration of Defendant City of Philadelphia's Motion to Dismiss, and any response thereto, it is hereby **ORDERED** that the Defendant's Motion is **GRANTED**, and plaintiff's amended complaint is **DISMISSED** with prejudice.

                                                **BY THE COURT:**

                                                _____

                                                **RUFE, J.**

IN THE UNITED STATE DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE | : :  :  : |
| **Plaintiff,** | : : |
| v. | :   CIVIL ACTION : : NO. 11-6553 |
| CITY OF PHILADELPHIA, | : : : |
| **Defendant.** | : |

## THE CITY OF PHILADELPHIA'S MOTION TO DISMISS

The City of Philadelphia respectfully moves this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all counts of plaintiff's amended complaint. In making this motion, and pursuant to Local Rule 7.1(c), the City incorporates by reference the attached memorandum of law as though they were fully set forth here.

DATE:  October 5, 2012                    CITY OF PHILADELPHIA LAW DEPT.
                                          Shelley R. Smith, City Solicitor


                                          CS963
                                          By:  Craig M. Straw
                                          Chief Deputy, Civil Rights Unit
                                          Amanda Shoffel, Assistant City Solicitor
                                          1515 Arch Street, 14th Floor
                                          Philadelphia, PA 19102-1595
                                          215-683-5448
                                          Attorneys for Defendant,
                                          City of Philadelphia

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,    :<br><br>    :<br>**Plaintiff,**    :<br>    :<br>v.    :<br>    :<br>CITY OF PHILADELPHIA,    :<br>    :<br>    :<br>**Defendant.**    : | CIVIL ACTION<br><br>NO. 11-6533 |

**THE CITY OF PHILADELPHIA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

**A.     Introduction.**

The City of Philadelphia ("City") respectfully moves to dismiss the amended complaint of plaintiff NAACP ("Plaintiff"). In that amended complaint, Plaintiff claims that the Department of Aviation Regulation 2-J ("Airport Advertising Regulation") is facially unconstitutional under the First Amendment and Article I, § 7 of the Pennsylvania Constitution. *See* Amended Complaint, Exhibit A, at 1-2, 10-11. Plaintiff's claims fail as a matter of law: Plaintiff cannot demonstrate that the Airport Advertising Regulation is unconstitutional in all of its applications, particularly where the Airport Advertising Regulation has a "plainly legitimate sweep." *See Washington State Grange v. Washington State Republican* Party, 552 U.S. 442, 449-50 (2008).

First, Plaintiff's claims fail because the sections of the Airport Advertising Regulation that govern private advertising involve viewpoint neutral, reasonable regulation of private advertising in a nonpublic forum. *See, e.g., ISKCON v. Lee*, 555 U.S. 682, 684 (1992) (airport terminal was nonpublic forum); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303-04 (1974) (decision to limit categories of advertising on city buses was reasonable and permissible under the First Amendment).

Second, this Court should reject Plaintiff's claim that the Airport Advertising Regulation requirement that Airport advertisements "propose a commercial transaction" is unconstitutionally vague. The standard set forth in the Airport Advertising Regulation tracks the definition of commercial speech set forth in Supreme Court case law, and hence, is not unconstitutionally vague. *See, e.g.*, *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 n.24 (1976) (noting "commonsense differences" between speech that proposes a commercial transaction and other kinds of speech).

Third, Plaintiff's claims about the sections of the Airport Advertising Regulation that govern the City's own advertisements fail because those advertisements involve government speech. The Free Speech Clause "restricts government regulation of private speech; it does not regulate government speech." *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2008).

Finally, Plaintiff's claims under Article I, § 7 fail for the same reasons that Plaintiff's First Amendment claims fail. Therefore, this Court should dismiss Plaintiff's amended complaint.

A.   **Applicable Standards.**

   1.   **Motion to Dismiss.**

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and determine whether, under any reasonable reading of the complaint, plaintiff may be entitled to relief." *See, e.g.*, *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010). However, when reviewing a complaint, the "assumption of truth" does not apply to the legal conclusions a plaintiff sets forth in that complaint. *See, e.g. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Further, "a complaint must . . . 'state a claim . . . that is plausible on its face.'" *See Kerchner*, 612 F.3d at 207, *quoting Iqbal*, 129 S. Ct. at 1949 (2009). As such, the complaint

must allege facts sufficient to "raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]

### 2. Facial Challenge.

Under *United States v. Salerno*, 481 U.S. 739, 745 (1987), plaintiff can only succeed in a facial challenge by establishing that "no set of circumstances exists" under which Airport Advertising Regulation would be valid, *i.e.*, that the law is unconstitutional in all of its applications. *See Washington State Grange v. Washington State Republican* Party, 552 U.S. 442, 449-50 (2008). While the Supreme Court noted in *Washington State Grange* that some members of the Supreme Court have criticized the *Salerno* formulation, it also emphasized that all members of the Court agree that a facial challenge *must* fail where the challenged enactment has a "plainly legitimate sweep." *See id*. Further, in reviewing a facial challenge, a court must be careful not to go beyond the facial requirements of the challenged statute or regulation and speculate about "hypothetical" or "imaginary" cases to determine whether a plaintiff has met such a standard. *See id.*

### B. Plaintiff's Federal Court Complaints and the Airport's Regulations.

In January 2011, Plaintiff made a request to post its "Misplaced Priorities" advertisement at the airport, and the Airport rejected plaintiff's advertisement. Exh. A at ¶¶ 13-14. Plaintiff filed its initial complaint in this Court challenging that denial. Exh. A at ¶ 14.

Plaintiff alleges that prior to March 2012, the City did not have written politics or guidelines relating to advertising at the Airport. Exh. A at ¶ 18. Plaintiff alleges that prior to

---

[1] Defendant here has attached as an exhibit to this Motion to Dismiss the Airport Advertising Regulation challenged in Plaintiff's Amended Complaint. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering a purchase and sales agreement attached by defendants to a motion to dismiss where the "complaint is based on this contract and describes some of its terms" but was not attached as an exhibit to the complaint). "When a complaint relies on a document, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute the evidence is greatly diminished" such that a motion to dismiss that relies upon such a document is not converted into a motion for summary judgment. *Id.* at 1196-97. Thus the Court can consider the text of the Airport Advertising Regulation without converting this Motion to Dismiss into a motion for summary judgment.

March 2012, the Airport accepted and displayed commercial advertisements.  Exh. A at ¶ 21.  Plaintiff further alleges that prior to March 2012, the Airport also accepted advertisements that were not commercial advertisements, such as advertisements sponsored by the World Wildlife Federation that raised concerns about climate change and fishing practices.  Exh. A at ¶ 21.

After the initial complaint was filed, the City and Plaintiff agreed that Plaintiff could post its "Misplaced Priorities" advertisement at the Airport.  Exh. A at ¶¶ 15-17.

In March of 2012, the City's Division of Aviation issued a comprehensive set of changes to Philadelphia International Airport/PHL ("Airport") regulations ("Regulations"), with the objective of "promot[ing] the safe and efficient use of the Airport facilities."  *See* Regulations, Exhibit B at 1-1.  The Regulations address, among other things, aircraft operations; airfield vehicle operations, fire safety; and airport security.  *See* Exh. B at 3-1, 4-1, 6-1, 7-1.  The Regulations also include sections relating to Airport tenants; Airport advertising; and picketing, leaflet distribution, and solicitation at the Airport.  *See* Exh. B at 2-5, 2-1, 2-4.

Under the Regulations, the Airport is divided into a series of areas, each with different security levels and security compliance requirements.  *See* Exh. B at 7-1.  The "public areas" are the areas that are normally accessible to the general public, such as the public portions of all terminal buildings, the Airport parking lots, and Airport roadways.  *See* Exhibit B at 7-1(C).  The Airport also includes the "secured area," where access is controlled and limited to authorized persons, and the "sterile area," which is the area in the Airport terminals past the TSA security screening checkpoints.  *See* Exhibit B, 7-1 – 7-28.

The Regulations provide that the Airport is a "security sensitive environment, designed and utilized as an air transportation facility, and is neither designed not intended as a public forum for First Amendment activities."  *See* Exh. B at Appendix A 1-1.  Expressive activities, such as leaflet distribution and picketing, are only allowed to occur in designated portions of the public areas as set forth in the regulations.  *See* Exh. B at Appendix A 1-5 (picketing and leafleting zones), Appendix A Att. B (application).  These zones are located outside of the

Airport terminals, on portions of the airport sidewalks where members of the public are dropped off to enter the terminal.  Appendix A Att. A (designated zone locations).

The March 2012 Regulations also include the Airport Advertising Regulation:

**Advertisements.**

1. No person shall post, distribute, or display any Advertisement at the Airport without the express written consent of the CEO and in such manner as may be prescribed by the CEO.

2. The CEO will not accept or approve any of the following Advertisements:
a) Advertisements that **do not** propose a commercial transaction;
b) Advertisements relating to the sale or use of alcohol or tobacco products;
c) Advertisements that contain sexually explicit representations and/or relate to sexually oriented businesses or products; and/or
d) Advertisements relating to political campaigns.

3. The City shall have the right to post or cause to be posted its own advertising promoting:
a) Air Service;
b) The use of Airport related services;
c) The greater Philadelphia area and economy;
d) Philadelphia tourism initiatives; and
e) Other City initiatives or purposes.

*See* Exh. B at 2-4.

On August 2, 2012, Plaintiff filed its amended complaint alleging a facial challenge to the Airport Advertising Regulation.  Exh. A at 14.

**C.    Argument.**

**1.    This Court Should Dismiss Plaintiff's First Amendment Facial Challenge to Section 2 of the Airport Advertising Regulation.**

Plaintiff focuses its First Amendment facial challenge on section 2 of the Airport Advertising Regulation, and the Regulation's requirement that Airport advertisements "propose a commercial transaction."  Exh. A at ¶¶ 1, 17, 19, 37-40.  Plaintiff claims that this requirement

5

violates the First Amendment because it is not "narrowly tailored to promote a compelling governmental interest"; amounts to viewpoint discrimination against what Plaintiff calls "non-commercial" advertisements; and is unconstitutionally vague. Exh. A at ¶¶ 3, 4, 19, 23, 29, 30-34, 37-40.

First, Plaintiff's claims fail because the Airport's advertising spaces are a nonpublic forum. In a nonpublic forum, restrictions on private speech need only be reasonable and viewpoint neutral, and the requirements set forth in the Airport Advertising Regulation are just that: reasonable and viewpoint neutral. As for plaintiff's vagueness challenge, the requirement that advertisements "propose a commercial transaction" adopts the Supreme Court's definition for commercial speech and is, therefore, not unconstitutionally vague.

### a. The Airport's Advertising Spaces are a Non-Public Forum.

Here, the relevant "forum" for purposes of plaintiff's facial challenge to the Airport Advertising Regulation is the Airport's advertising spaces. *See Christ's Bride Ministries, Inc. v. SEPTA*, 148 F.3d 242, 248 (3d Cir. 1998) (for purposes of First Amendment challenge to SEPTA's advertising practices, "forum" was SEPTA's advertising space). The Airport's advertising spaces are neither a traditional public forum, nor are those spaces a designated public forum. Rather, the Airport's advertising spaces are a non-public forum, and as a result, the Airport Advertising Regulation need only be reasonable and viewpoint neutral to satisfy First Amendment requirements. *See, e.g.*, *ISKCON v. Lee*, 505 U.S. 675, 678-69 (1992).

To determine a forum category, the policy and practice of a government entity must be examined, as well as any restrictions on expressive activity, to determine whether the government intended to designate a place not traditionally open to assembly and debate as a public forum. *See Cornelius v. NAACP Legal Defense Fund*, 473 U.S. 788, 802-04 (1985); *Christ's Bride*, 148 F.3d at 242. The government does not create a public forum by permitting limited discourse, but only by clearly and deliberately opening a nontraditional forum for public discourse. *See ISKCON*, 505 U.S. at 679-81; *Christ's Bride*, 148 F.3d at 148. As a result, even

when the government opens a forum for some speech, the forum does not become a public forum if the government did not intend to open the forum without limitation. *See ISKCON*, 505 U.S. at 679-81.

When running the Airport, the City acts as a proprietor and is understood to be acting as such for purposes of a First Amendment claim. *See ISKCON*, 505 U.S. at 678. An Airport is a commercial establishment designed to make a "regulated profit," it is not a forum for expression, particularly where nearly all "who visit it do so for some travel-related purpose. *See* 505 U.S. at 678, 682. The Regulations reflect these principles; the Regulations organize and promote safe and efficient Airport operations and commercial activity at the Airport and explicitly provide that the Airport itself is not designed or intended to be a forum for First Amendment activity. Exh. B. at 1-1, 3-1, 4-1, 6-1, 7-1, Appendix A at 1.

Along these lines, the Airport Advertising Regulation is designed to generate money and income for the Airport through the sale of advertising space, and is limited only to certain restricted categories of speech – i.e., speech that proposes a commercial transaction. Exh. B at 2-4. Where a government transit entity has not opened its advertising spaces to anything other than purely commercial advertising, those spaces are a non-public forum. *See Lebron v. Amtrak*, 69 F.3d 650, 658 (2d Cir. 1995) (advertising space was nonpublic forum where space only used for commercial advertisements); *see also Children of the Rosary*, 154 F.3d 972, 977-78 (9th Cir. 1998) (transit advertising nonpublic forum where that advertising was limited to commercial advertising alone); *Christ's Bride*, 148 F.3d at 250-51 (SEPTA advertising spaces were a designated public forum where SEPTA used advertising space for both commercial and expressive activity). Here, the Airport Advertising Regulation limits advertising space to advertisements that propose a commercial transaction, and as such, those spaces are a nonpublic forum.

In its amended complaint, Plaintiff makes a number of allegations relating to the Airport's pre-March 2012 practices. In particular, plaintiff alleges that the City did not have written policies or guidelines relating to advertising at the Airport prior to March 2012, and that

the Airport had accepted "non-commercial" advertisements prior to March 2012.  Exh. A at ¶¶ 18, 21.

Even if these allegations are taken as true, such allegations do not alter the status of the Airport's advertising spaces as a nonpublic forum, or require the Airport to accept all "noncommercial . . . advertisements going forward."  *See Pittsburgh League of Young Voters Education Fund v. Port Authority of Allegheny County*, 653 F.3d 290, 298 (3d Cir. 2011).  When a transit entity issues a policy altering and limiting the use of its advertising spaces to commercial speech, those spaces become a nonpublic forum.  *See id.*; *see also Children of the Rosary*, 154 F.3d 972-73 (transit authority changed prior, unconstitutional policy to limited, neutral policy, and created nonpublic forum in its advertising spaces).  Further, Plaintiff and the City agreed to resolve the dispute over Plaintiff's initial request by allowing Plaintiff to post its advertisement at the Airport.  Exh. A at ¶ 17.  The parties' resolution of that dispute does not alter the current status of the advertising spaces as a nonpublic forum.  *See Pittsburgh League of Young Voters Education Fund*, 653 A.2d at 298.

Along similar lines, Plaintiff also claims that the Airport Advertising Regulation "contrasts" with the Airport's regulation on leafleting, and concludes that if Plaintiff would have sought to hand out leaflets "inside [the Airport]" containing the same language and images as its "Misplaced Priorities" advertisement, the "City would have permitted such leafleting to occur."  Exh. A at ¶ 24.  The plain language of the Regulations undermines these claims.

Under the Regulations, leafleting and other expressive activities are only allowed in designated "zones" in the public areas outside of the Airport.  Exh. B at Appendix A 1-1, 1-5.  Otherwise, the Airport Regulations limit the Airport spaces and their functions to air travel, airport operations, security, and commercial activity for persons traveling through and working in the Airport.  Exh. B at 3-1, 4-1, 6-1, 7-1.  Such limitations include restricting Airport advertisements to advertisements that propose a commercial transaction.  Exh. B at 2-4.

Airports can, and do, limit First Amendment activities to zones or designated areas at an airport, and such regulations are valid time, place, and manner regulations on speech.  *See Lee*,

404 U.S. at 692-93 (O'Connor, concurring); *ISKCON Miami v. Metropolitan Dade Co.,* 147 F.3d 1282, 1283 (11th Cir. 1998) (regulations directing that only select areas of the airport were to be used for First Amendment expressive activities was constitutional).  That is what the Airport has done in its Regulations, designated its forum for First Amendment "expressive activity" in public areas outside of the Airport, and maintained other areas for running the Airport and commercial operations and transactions, such as the Airport's advertising spaces.  As such, the Airport's advertising spaces are a nonpublic forum.

> b.   **The Airport Advertising Regulation is Both Reasonable and Viewpoint Neutral.**

Because the Airport's advertising spaces are a nonpublic forum, the Airport Advertising Regulation need only be reasonable and viewpoint neutral.  It is, and so plaintiff's First Amendment claims must be dismissed.

First, the limitation of the Airport Advertising Regulation to commercial advertising must meet a standard of reasonableness.  *See ISKCON v. Lee*, 505 U.S. 671, 683 (1992); *see also Christ's Bride*, 148 F.3d at 250.  Plaintiff alleges that its advertisement will not cause "any significant harm" to the City, the Airport, or airport passengers; will help generate revenue for the Airport, and further alleges that other airports post non-commercial advertising without experiencing "harm."  Exh. A at ¶¶ 3, 16, 20, 22, 27, 28.  The City is not required to prove that certain speech must cause "harm" or "significant harm" in order to limit Airport advertising to advertisements that propose a commercial transaction, or to prove that the Airport has made the business decision that Plaintiff would recommend that it make.  Rather, the restriction on Airport advertising "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation."  *See ISKCON*, 505 U.S. at 683 (emphasis in original).

The Airport is a security-sensitive, commercial entity that caters to the traveling public; moreover, travelers in the Airport are a captive audience within the "sterile area" of the Airport terminals.  Exh. B at 1-1, 1-7, 1-10, Appendix A, Appendix B; *ISKCON*, 505 U.S. at 683.  Given

9

this environment, non-commercial activity and expression is limited to the public areas outside of the Airport.  Exh. B at Appendix A, Appendix B.  Here, the Airport has limited access to advertising space to maintain the commercial environment created at and by the Airport, and in so doing to "minimize chances of abuse, the appearance of favoritism, and the risk of imposing on a captive audience" – all of which are "reasonable legislative objectives advanced by the [C]ity in a proprietary capacity." *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974); *see also Children of the Rosary*, 154 F.3d at 977-80 (maintaining a position of neutrality, avoiding disputes, preventing loss of revenue from commercial advertisers due to noncommercial advertisements were all reasonable objectives for transit advertising policy); *Lebron*, 69 F.3d at 658, 660 (same).  In other words, allowing non-commercial advertisements would be inconsistent with the intended use and purpose of advertising spaces at the Airport under the Regulations.  *See ISKCON*, 505 U.S. at 683-84, 691-92 (O'Connor, J.).

       Therefore, the limitations set forth in the Airport Advertising Regulations are reasonable.  *See ISKCON*, 505 U.S. at 683.  Moreover, the limitation of advertisements to those that "propose a commercial transaction" is viewpoint neutral.  *See, e.g.*, *Children of the* Rosary, 154 F.3d at 980-81 (restriction on bus advertisements to advertisements that "propose a commercial transaction" was viewpoint neutral, and not viewpoint discrimination); *see also Pittsburgh League of Young Voters*, 653 F.3d at 297 (limiting transit advertisements to commercial advertisements is viewpoint neutral).

       In sum, the restrictions on private advertising set forth in the Airport Advertising Regulation are reasonable, viewpoint-neutral, and permissible under the First Amendment.  Plaintiff's First Amendment facial challenge to those restrictions should be dismissed.

      **c.**      **The "Propose a Commercial Transaction" Standard Set Forth the Airport Advertising Regulation Is Well Within the Bounds of the First Amendment.**

In its amended complaint, Plaintiff also claims that the Airport Advertising Regulation requirement that advertisements "propose a commercial transaction" is "unconstitutionally vague." Exh. A at ¶ 39. This Court should dismiss this claim as well.

The test for identifying commercial speech, as the Supreme Court has ruled, is whether the advertisement "proposes a commercial transaction." *See Board of Trustees v. Fox*, 492 U.S. 469, 473-74 (1989); *see also Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 983 (9th Cir. 1998) (requirement that transit advertising "propose[] a commercial transaction" was not unconstitutionally vague based on Supreme Court case law). Given that the Supreme Court has also opined that there are "commonsense differences between speech that does no more than propose a commercial transaction and other varieties" of speech, the Airport Advertising Regulation standard is permissible under the First Amendment. *See Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 749, 771 n.24 (1976).

Plaintiff claims that there may be scenarios where the Airport Advertising standard may cause "confusion," but such allegations do not render the standard unconstitutionally vague. Exh. A. at ¶¶ 32-34. A possible or hypothetical difficulty in interpretation, or an "occasional marginal case" that "might arise" on is not sufficient to make the Airport Advertising Regulation unconstitutionally vague. *See Children of the Rosary*, 154 F.3d at 983; *Washington State Grange v. Washington State Republican* Party, 552 U.S. 442, 449-50 (2008) (in ruling on facial challenge, court must remain with requirements of regulation and not rule on "hypothetical" cases).

Therefore, this Court should dismiss Plaintiff's First Amendment "vagueness" claim as well.

> **2. This Court Should Dismiss Plaintiff's First Amendment Facial Challenge to Section 3 of the Airport Advertising Regulation, Because the City's Advertisements Are Government Speech.**

This Court should also reject Plaintiff's challenge to City advertisements, as set forth in Section 3 of the Airport Advertising Regulation, because the City's advertisements are government speech.

> Section 3 of the Airport Advertising Regulation provides:
>
> The City shall have the right to post or cause to be posted its own advertising promoting:
> a) Air Service;
> b) The use of Airport related services;
> c) The greater Philadelphia area and economy;
> d) Philadelphia tourism initiatives; and
> e) Other City initiatives or purposes.

*See* Exhibit B at 2-4.

To be government speech, the speech in question must either be issued by a government entity or "effectively controlled" by that entity. *See, e.g.*, *Johanns v. Livestock Market Assoc.*, 544 U.S. 550, 560 (2005) (message of generic advertising promoting eating beef, such as "Beef: It's What's For Dinner" was effectively controlled by the government, and was government speech); *Delano Farms Co. v. California Table Grape Comm'n*, 586 F.3d 1219, 1222-23 (9th Cir. 2009) (generic advertising and marketing for grapes by California Table Grape Commission was government speech).

Section 3 provides that the City has the right to post its own advertisements on certain enumerated topics, such as air service, the use of airport-related services, and City tourism initiatives. *See* Exh. B. at 2-4. Given that these are advertisements issued by a government entity, and the City determines both the content and the message of such advertisements, these advertisements are government speech. With such advertisements, the City is "entitled to say what it wishes" and choices regarding the "views it wants to express" and the subjects the City wishes to promote at the Airport. *See Summum*, 555 U.S. at 467. Further, the City's so doing does not create a "constitutional obligation to incorporate the message of any private party with

something to say." *See Wells v. City and County of Denver*, 257 F.3d 1132, 1144 (10th Cir. 2001) (city not required to post dissenting message from member of the public next to its own holiday display).

Put another way, it is axiomatic that the First Amendment "restricts government regulation of private speech; it does *not r*egulate government speech." *See Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2008) (emphasis added). As a result, government speech is "exempt from First Amendment scrutiny." *See id*. The City's advertisements at the Airport are limited by the terms of Section 3, and the City is ultimately "accountable to the electorate and the political process" for its actions, not through the dictates of the First Amendment. *See id*. at 468-69. Therefore, Plaintiff's facial challenge to Section 3 fails as a matter of law, and should be dismissed. *See id*.

### 3. This Court Should Dismiss Plaintiff's Claims Under Article I, § 7 of the Pennsylvania Constitution.

Plaintiff has alleged that the Airport's Advertising Regulation violates Article I, § 7 of the Pennsylvania Constitution. Any such claims fail for the same reasons that Plaintiff's First Amendment claims fail. The Pennsylvania Supreme Court has explicitly recognized instances where Article I, § 7 results in a different analysis and standard than the First Amendment. *See, Bush v. Marple Newtown School Dist.*, 567 F.3d 89, 94 & n.6 (3d Cir. 2009); *see also Pap's A.M. v. City of Erie*, 571 Pa. 375, 405-07, 812 A.2d 591, 610-11 (2002) (determining that Article I, § 7 provided greater protection to nude dancing as expressive conduct than the First Amendment). However, where the analysis of Pennsylvania Supreme Court has not explicitly diverged from First Amendment jurisprudence, the two claims are analyzed along similar lines. *See, e.g.*, *Bush*, 567 F.3d at 94.

The Pennsylvania Supreme Court has applied First Amendment forum analysis to determine whether Art. I, § 7 provides for access to a particular public, or non-public, space. *See, e.g.*, *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life*

*Ins. Co.*, 512 Pa. 23, 32-33, 515 A.2d 1331, 1335 (1986) (shopping mall was not a forum for purposes of Art. I, § 7); *Commonwealth v. Tate*, 495 Pa. 158, 173-74, 432 A.2d 1390 (1981) (college had created public forum Art. I, § 7 when it opened up space to expressive and political activity). Further, as is the case with the First Amendment, Article I, § 7, protects against undue restrictions on private speech; it does not address government speech. *See* Article I, § 7; *see also Western Pennsylvania*, 512 Pa. at 30, 515 A.2d at 1334 (discussing scope of Article I, § 7 and other individual rights set forth in the Pennsylvania Constitution). In sum, Plaintiff's Article I, § 7 claims fail for the same reasons that Plaintiff's First Amendment claims fail, and this Court should dismiss those claims as well.

### D. Conclusion.

For the foregoing reasons, the City respectfully requests that the Court dismiss plaintiff's amended complaint with prejudice.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPT.
Shelley R. Smith, City Solicitor


CS963
By: Craig M. Straw
Chief Deputy, Civil Rights Unit
Amanda Shoffel, Assistant City Solicitor
1515 Arch Street, 14th Floor
Philadelphia, PA 19102-1595
215-683-5448
Attorneys for Defendant,
City of Philadelphia

Dated: October 5, 2012

**CERTIFICATE OF SERVICE**

      I, Craig Straw, certify that on October 5, 2012, the City's Motion to Dismiss was filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System.  The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service:

      Aden J. Fine
      Christopher Hansen
      American Civil Liberties Union
      125 Broad Street
      18th Floor
      New York, NY 10004
      212-549-2693
      afine@aclu.org
      chansen@aclu.org

      Alexander Bilus
      Fred T. Magaziner
      Dechert LLP
      Cira Centre
      2929 Arch St
      Philadelphia, Pa 19104
      215-994-2608
      sandy.bilus@dechert.com
      fred.magaziner@dechert.com

      Mary Catherine Roper
      ACLU of PA
      PO Box 40008
      Philadelphia, Pa 19106
      215-592-1513
      mroper@aclupa.org

      By:    CS963_____
            Craig M. Straw

Date:  October 5, 2012

15