IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br>　　　　Plaintiff,<br>　　v.<br>CITY OF PHILADELPHIA,<br>　　　　Defendant. | CIVIL ACTION<br><br>NO. 11-6533 |

MEMORANDUM OPINION

RUFE, J.                                                                                              MAY 20, 2013

Plaintiff, the National Association for the Advancement of Colored People ("NAACP"), brings this action against Defendant the City of Philadelphia, alleging that the City's policy regarding advertising at the Philadelphia International Airport is an unconstitutional infringement on freedom of speech under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. The City has moved to dismiss the Amended Complaint. Following the April 26, 2013 oral argument on the Motion, the matter is now ripe for disposition.

I. BACKGROUND[1]

On April 7, 2011, the NAACP released a report, titled "Misplaced Priorities," which takes the position that the United States overspends on incarceration at the expense of education. The report outlines specific reforms that, if implemented, could reverse this trend. The NAACP planned a public awareness campaign to accompany the release of this report and as part of that campaign, prepared a series of advertisements to display at airports across the country. The

---

[1] The facts alleged in the Amended Complaint (Doc. No. 34) are accepted as true, and all reasonable inferences are drawn in favor of Plaintiff. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

NAACP selected Philadelphia International Airport as an airport where it sought to display one of these advertisements.  In January 2011, the NAACP submitted the following advertisement to Defendant, the City of Philadelphia's Division of Aviation for approval for placement at the Airport:

> Welcome to America, home to
> 5% of the world's people &
> 25% of the world's prisoners
>
> Let's build a better America together. NAACP.org/smartandsafe

The City rejected the advertisement.  The NAACP alleges that the City rejected the advertisement because of its content or viewpoint in violation of the First and Fourteenth Amendments to the United States Constitution and Section 7, Article 1 of the Pennsylvania Constitution.  After the initial complaint was filed in this matter, the City, pursuant to the parties' stipulation, agreed to post the advertisement at the Airport for a limited time.[2]

Despite the City's agreement to allow the advertisement to be posted for a limited time, in March 2012, the City adopted a written policy regarding advertising at the Airport, under which the NAACP's advertisement would not be allowed.  The Policy provides in relevant part:

**ADVERTISEMENTS**

1. No person shall post, distribute, or display any Advertisement at the Airport without the express written consent of the CEO and in such manner as may be prescribed by the CEO.

2. The CEO will not accept or approve any of the following Advertisements:

   a) Advertisements that **do not** propose a commercial transaction;

---

[2] See Doc. No. 31.  The initial complaint also named Clear Channel Holdings (which serves as the advertising agent for the Airport) as a defendant.  Clear Channel was dismissed by stipulation of the parties and is not named as a defendant in the Amended Complaint.

2

    b) Advertisements relating to the sale or use of alcohol or tobacco products;

    c) Advertisements that contain sexually explicit representations and/or relate to sexually oriented businesses or products; and/or

    d) Advertisements relating to political campaigns.

3. The City shall have the right to post or cause to be posted its own advertising promoting:

    a) Air Service;

    b) The use of Airport related services;

    c) The greater Philadelphia area and economy;

    d) Philadelphia tourism initiatives; and

    e) Other City initiatives or purposes.[3]

Pursuant to the parties' stipulation, the NAACP filed an Amended Complaint challenging this policy as an unconstitutional infringement of speech. The NAACP alleges that before March 2012, the City did not have a written policy regarding Airport advertising and it, in fact, accepted a wide variety of advertising, including non-commercial advertisements that could be considered controversial. For example, according to the NAACP, advertisements on display at the Airport shortly after the NAACP's advertisement was refused included the following:

(a) an advertisement for the World Wildlife Federation ("WWF"), captioned "Protecting the Future of Nature," and stating that the WWF "works around the world developing responsible fishing practices";
(b) a similar WWF advertisement with a picture of two overheated polar bears, stating how "WWF is developing global solutions to reduce carbon emissions and helping vulnerable communities, species and habitats adapt to a changing climate";
(c) another WWF advertisement discussion the organization's efforts to preserve habitats for panda bears in China and the need for doing so;
(d) an advertisement by the Foundation For A Better Life with a picture of Bishop Desmond Tutu, stating, "His moral compass points to equality. PEACE. Pass It On."

---

[3] Philadelphia International Airport Rules and Regulations Manual at 2-4 (Ex. B to Def.'s Mot. to Dismiss).

3

 (e) a similar advertisement about racial equality from the Foundation for a Better Life, stating "Here's to you, Mr. Robinson," featuring a picture of Jackie Robinson, . . . ;
 (f) an advertisement by the National PTA, captioned, "The School's Janitor Knows Where Your Kid's Desk Is. Do You?" and advocating for parents to "know about your kid's school" and to "know about your kid";
 (g) an advertisement by the National Center for Missing & Exploited Children focusing on places where sexual predators can be found, and discussing the dangers posed by the Internet for children; and
 (h) an advertisement by the USO saying "Support *Our* Troops."

The NAACP alleges that none of these non-commercial advertisements caused harm to the City, Airport, or Airport patrons, and that based on the City's own statements that it previously allowed non-commercial advertisements to ensure that all advertising spaces were filled, permitting the display of non-commercial advertisements would not cause the City to lose revenue. Additionally, the NAACP alleges that the City has permitted the display of non-commercial advertisements honoring the Red Cross and other non-profit groups under the new policy.

The City in moving to dismiss argues, *inter alia*, that the NAACP's claims fail because Airport advertising policy is a viewpoint neutral, reasonable regulation of private advertising in a nonpublic forum. In response, the NAACP argues that to determine whether the policy is unconstitutional, the Court must first determine whether airport advertising space is a "private forum" or a "designated public forum." Because this determination requires a developed factual record, which this Court does not have before it at this stage of the proceedings, the NAACP asserts that the City's argument is premature.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

4

statement" lacks enough substance to show that he is entitled to relief.[4] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[5] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[6] Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[7] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[8] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[9] Legal questions that depend upon a developed factual record are not properly the subject of a motion to dismiss.[10]

### III. DISCUSSION

It is well established that, as a general rule, the government may "limit speech that takes place on its own property without running afoul of the First Amendment."[11] Where a

---

[4] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[5] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[6] Twombly, 550 U.S. at 555, 564.

[7] Id. at 570.

[8] Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[9] Id. (quoting McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[10] See, e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 836 F. Supp. 2d 274 (E.D. Pa. 2011).

[11] Christ's Bride Ministries, Inc. v. Se. Pa. Transp. Auth., 148 F.3d 242, 247 (3d Cir. 1998) (considering an appeal by Christ's Bride Ministries, an antiabortion group that sought to have its advertisement stating that women who choose abortion suffer more and deadlier breast cancer displayed in Southwestern Pennsylvania Transportation Authority's (SEPTA) subway and commuter rail stations. Following a bench trial, the district court entered

government forum has not been opened to the type of expression at issue in a given case, government restrictions on speech need only be reasonable and viewpoint neutral, with reasonableness judged by the purpose served by the relevant forum.[12] "Where, however, the property in question is either a traditional public forum or a forum designated as public by the government, the government's ability to limit speech is impinged upon by the First Amendment."[13] Where the government-owned property is a "public" forum, strict scrutiny applies and speech restrictions are constitutional only if they are narrowly tailored to achieve a compelling government interest.[14] Thus, whether a government's limitation on speech is constitutional depends on the proper classification of the forum at issue.

To determine the proper classification of the forum at issue, the Court must first define the forum itself.[15] A forum is defined "in terms of the access sought by the plaintiff."[16] Here, it is undisputed that the forum at issue is Airport advertising space.[17]

While the parties agree on the *definition* of the forum at issue, they disagree about the proper *classification* of that forum. There are three classifications of fora.[18] The first,

---

judgment in favor of SEPTA. The Third Circuit reversed on appeal, addressing, among other things, the forum classification issue).

[12] Id.

[13] Id.

[14] Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty., 653 F.3d 290, 295-96 (3d Cir. 2011) (affirming the district court's decision to enter judgment, after a bench trial, in favor of Plaintiffs, public interest organizations who sought to have their advertisements [stating that ex-prisoners had a right to vote and encouraging them to do so] posted on Port Authority buses).

[15] Christ's Bride Ministries, 148 F.3d at 247-48.

[16] Id. at 248.

[17] See id. ("[Plaintiff] did not seek to leaflet, demonstrate, or solicit in the rail and subway stations as a whole. Instead, it sought access only to the advertising space leased out by [defendant] SEPTA, through [defendant] TDI. . . . We conclude, therefore, that the forum at issue is SEPTA's advertising space.").

[18] Pittsburgh League of Young Voters Educ. Fund, 653 F.3d at 295.

6

"traditional public fora," are areas which "'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"[19]  "[A]rchetypal examples [of these fora] include streets and parks."[20]  Here it is clear, and the parties do not argue otherwise, that Airport advertising space is not a traditional public forum.

On the other end of the spectrum from traditional public fora are nonpublic fora.[21]  "[P]ublic property that 'is not by tradition or designation a forum for public communication' constitutes a nonpublic forum.  Access to [such a] forum can be restricted so long as the restrictions are reasonable and viewpoint neutral."[22]  The City asserts that Airport Advertising space should be classified as a nonpublic forum.

Finally, "public property 'that has not traditionally been regarded as a public forum' but that the government has intentionally opened up for use by the public as a place for expressive activity," is a "designated public forum."[23]  As with a traditional public forum, speech restrictions in a designated public forum are subject to strict scrutiny.[24]  The NAACP argues that Airport advertising space should be classified as a designated public forum.

---

[19] Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).

[20] Christ's Bride Ministries, 148 F.3d at 248.

[21] Pittsburgh League of Young Voters Educ. Fund, 653 F.3d at 296.

[22] Id. (quoting Perry, 460 U.S. at 46).

[23] Id. at 295 (quoting Pleasant Grove City v. Summum, 555 U.S. 460 (2009)).

[24] Id.

To determine whether Airport advertising space is a designated public forum, the Court must engage in a fact-specific analysis of the forum itself,[25] as the Third Circuit has described the analysis:

> A designated public forum is created because the government so intends. . . . We accordingly look to the authority's intent with regard to the forum in question and ask whether [the defendant] clearly and deliberately opened its advertising space to the public. To gauge [a defendant's] intent, we examine its policies and practices in using the space and also the nature of the property and its compatibility with expressive activity. Restrictions on the use of the forum, however, do not necessarily mean that [defendant] has not created a public forum. They may demonstrate instead that [defendant] intended to create a limited public forum, open only to certain kinds of expression.[26]

To discern intent, a court must look at the purpose for which the defendant uses the space in question as well as defendant's policy and past practice in using the space.

Given the nature of this inquiry and the lack of a developed factual record, the Court finds that it is premature to classify the forum at this time. In the absence of a forum classification, the Court is unable to determine whether the policy is constitutional. The City does not argue in the motion that their policy is narrowly-tailored to achieve a compelling government interest as would be necessary to render a policy implemented in a designated public forum constitutional. Therefore, the Motion to Dismiss will be denied with respect to the NAACP's claim that Section 2 of the Airport advertising policy is unconstitutional.[27]

---

[25] See generally Christ's Bride Ministries, 148 F.3d at 248-52.

[26] Christ's Bride Ministries, 148 F.3d at 248-49 (internal citations omitted).

[27] The City cites Christ's Bride Ministries, Inc. v. Southeastern Pennsylvania Transportation Authority and Pittsburgh League of Young Voters Educational Fund v. Port Authority of Allegheny County, for the proposition that the City's past practice regarding Airport advertising is not alone sufficient to establish that Airport advertising space is a designated public forum and also for the proposition that even if the forum was a designated public forum prior to adopting the new Policy, the City is permitted to close such a forum, as it did in adopting this new policy. Although the City is correct as to both propositions and while these decisions are instructive as to the use of evidence of the City's past practices in this case, these principles do not alter the Court's decision on the Motion. Christ's Bride Ministries and Port Authority stand not only for the above-cited propositions, but also for the proposition that to determine the proper forum classification, the Court must engage in a fact-specific analysis of the

The City also argues that the Court should dismiss the NAACP's claim that the policy violates Article I, § 7 of the Pennsylvania Constitution because "[a]ny such claim fails for the same reasons that Plaintiff's First Amendment claim fail[s]."[28]  Because the Motion is denied as to the First Amendment claim, it will also be denied as to the Pennsylvania Constitutional claim.[29]

---

forum itself.  See Christ's Bride Ministries, 148 F.3d at 248-52.  In both Christ's Bride Ministries and Port Authority, the court considered the issue based on a full record developed during a bench trial.  See footnotes 11 and 14 *supra*.  At oral argument the City conceded that the Court must determine the proper classification of the forum at issue to find that the Policy is constitutional as a matter of law and was unable to point to a single case where a court has determined the issue on a motion to dismiss.  Christ's Bride Ministries and Port Authority support the Court's decision not to reach the forum classification issue at this time.

[28]  Doc. No. 41 at 15.

[29]  The City also argues that the Court should dismiss the NAACP's claim that the Airport advertising policy is unconstitutionally vague because the Supreme Court has held that the test for identifying commercial speech is whether an advertisement "proposes a commercial transaction," and Airport advertising policy restricts speech to advertisements that "propose a commercial transaction."  Doc. No. 41 at 13 (citing Board of Trustees State Univ. of N.Y. v. Fox, 492 U.S. 469, 473-74 (1989)).  However, simply because the Supreme Court has defined commercial speech as speech that "proposed a commercial transaction," does not necessarily mean that this phrase, when used in the content of the City's Airport advertising policy, is not vague as a matter of law.  But see Children of the Rosary v. City of Phoenix, 154 F.3d 972, 983 (9th Cir. 1998); Major Media of the Se., Inc. v. City of Raleigh, 792 F.2d 1269, 1272 (4th Cir.1986).  Accordingly, the City's argument alone does not provide a basis for dismissal.

Additionally, while the City is correct that a facial challenge to Section 3 of the Airport advertising policy would necessarily fail because Section 3 applies to City advertisements which are government speech "exempt from First Amendment Scrutiny," [Doc. No. 41 at 15 (quoting Pleasant Grove City v. Summum, 555 U.S. 460, 468 (2008)) (internal quotation marks omitted)], the Court does not read the Complaint as asserting a facial challenge to Section 3 of the Policy and the NAACP has stated that this was not its intent in including the language of Section 3 in the Amended Complaint.  Thus, this argument does not provide a basis for dismissal.

Finally, in response to the Court's questioning at oral argument, the City suggested that the June 21, 2012 stipulation, by which the City agreed to post the NAACP's advertisement for a limited period of time, prohibits the NAACP from raising claims regarding the City's initial rejection of the NAACP's advertisement.  See Doc. No. 31.  The City, however, did not provide a complete response to this question, which had not been fully addressed in briefing, instead stating simply that the parties settled those claims and that past practice alone does not establish the nature of the forum.

The stipulation, which is the only record of the parties' agreement before the Court, provides:

> It is hereby stipulated and agreed by and between Defendant City of Philadelphia and Plaintiff National Association For The Advancement of Colored People ("NAACP"):
> 1. During the months of August, September and October, Defendant City will provide NAACP with two advertising spaces free of charge at the Philadelphia International Airport, one in the International Arrivals terminal and one in wither terminal B or C, for the display of the advertisement previously submitted by the NAACP which reads "Welcome to America, home to 5% of the world's people & 25% of the world's prisoners."

9

## IV. Conclusion

For the foregoing reasons, the City's Motion to Dismiss will be denied. An appropriate Order follows.

---

2. After July 15, 2012, Defendant City of Philadelphia will pay counsel for NAACP the amount of $8800.00 in attorney fees.
3. No later than June 15, 2012, Plaintiff will file an amended complaint to challenge the current advertising policy at the Philadelphia International Airport.
4. The parties will stipulate to the dismissal of Defendant Clear Channel Holdings, Inc. d/b/a Clear Channel Airports.

The stipulation does not explicitly limit the assertion of claims in the Amended Complaint and it is not clear whether the agreement operates as a release of claims regarding the initial denial of the NAACP's request to advertise. Without additional information, the Court cannot deduce whether and what claims are barred by operation of the stipulation.