IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Plaintiff, v. CITY OF PHILADELPHIA, Defendant. | CIVIL ACTION NO. 11-6533 |

FILED DEC 19 2014 MICHAEL E. KUNZ, Clerk By Dep. Clerk

**MEMORANDUM OPINION**

**RUFE, J.** **December 19, 2014**

By prior memorandum opinion and order, the Court granted summary judgment for Plaintiff.[1] Following additional briefing, the Court now determines the appropriate scope of injunctive and declaratory relief.

## I. Factual and Procedural History

In January 2011, Plaintiff, the National Association for the Advancement of Colored People ("NAACP"), submitted a proposed advertisement titled "Misplaced Priorities" to be displayed at the Philadelphia International Airport ("Airport"). The ad showed the Statue of Liberty silhouetted against a sunset to the right of a block of text that read, "Welcome to America, home to 5% of the world's people & 25% of the world's prisoners." Below that sentence, in smaller type was the text: "Let's build a better America together. NAACP.org/smartandsafe." The City of Philadelphia ("City"), which controls the Airport, rejected the ad and the NAACP filed a complaint in this Court. At the time of the rejection, the City had no written policy regarding what advertisements could be displayed in the Airport. In March 2012, while the complaint was pending, the Airport comprehensively revised its Rules

[1] The Court incorporates by reference its prior memorandum opinion [Doc. No. 110] and order [Doc. No. 111].

cc: legal

and Regulations; the revised Rules and Regulations included Section 2(J)(a) (the "written policy"), which banned "advertisements that do not propose a commercial transaction" at the Airport.[2] The City also maintained an unwritten policy of rejecting advertisements contrary to the Airport's mission of promoting a positive image of the City and Airport. These policies notwithstanding, the City entered into a settlement agreement with Plaintiff pursuant to which the "Misplaced Priorities" ad was displayed in the Airport at two locations for three months. The parties continued to dispute whether the NAACP would be permitted to display its ad after the period covered by the settlement agreement.

Plaintiff amended its complaint to bring facial challenges to the written and unwritten policies under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. The parties then engaged in discovery and cross-moved for summary judgment. On August 1, 2014, this Court granted Plaintiff's motion for summary judgment, but did not immediately enter an injunction. Instead, after a telephone conference with the parties, the Court ordered each party to submit a proposed order and briefing in support thereof. These proposed orders, with requests for declaratory and injunctive relief, are currently before the Court.

*A. Injunctive Relief*

The parties dispute the proper scope of injunctive relief. Plaintiff requests that the Court enjoin the City from engaging in any further regulation of the content of Airport advertising, whereas Defendant requests that the Court enjoin enforcement of the City's current written and unwritten policies. "Injunctions, which carry possible contempt penalties for their violation[,] must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches

---

[2] Doc. No. 91-7 at 26.

of the law."[3] Accordingly, the Court may grant injunctive relief only for harms on which Plaintiff has met its burden of proof.[4] The scope of the injunction therefore must be based upon the Court's ruling on summary judgment.

In the context of this First Amendment case, the Court must be mindful that not all regulations of speech's content constitute viewpoint discrimination. "Viewpoint discrimination is … an especially egregious form of content discrimination in which the government targets not just subject matter, but the particular views taken on subjects by speakers."[5] The government is almost never permitted to engage in viewpoint discrimination,[6] but some forms of content-based restriction are permissible. In a limited public forum, the government "may impose restrictions on speech that are reasonable and viewpoint neutral."[7]

In granting Plaintiff's motion for summary judgment, the Court focused on the City's written and unwritten policies. The Court held that the Airport is a limited public forum,[8] which permits the City to impose reasonable restrictions on access to Airport advertising provided that the restrictions are not viewpoint discriminatory.[9] With regard to the written policy, the Court held that the policy is an unreasonable restriction on access because it is not reasonably related to the purposes of the Airport as a forum, but did not determine whether the written policy

---

[3] *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974) (internal quotations omitted).

[4] *See Stilp v. Contino*, 743 F. Supp. 2d 460, 466 (M.D. Pa. 2010) ("'in deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof).'") *quoting Ciba-Geigy Corp v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir. 1984).

[5] 1 Smolla & Nimmer on Freedom of Speech § 3:9; *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Viewpoint discrimination is thus an egregious form of content discrimination.").

[6] 1 Smolla & Nimmer on Freedom of Speech § 3:11 (stating that laws engaging in viewpoint discrimination face scrutiny more exacting than strict scrutiny).

[7] *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009); *see also Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 806 (1985) (using the older terminology of a nonpublic forum).

[8] The Court's opinion reflected the changing terminology of Supreme Court case law on classification of speech fora. This Court held that the Airport was a nonpublic forum in the terminology of older case law, but a limited public forum under more recent case law. Although the terminology continues to evolve, the applicable legal standard has not changed. *See* Doc. No. 110 at 22.

[9] Doc. No. 110 at 22.

constitutes viewpoint discrimination.[10] By contrast, the Court held as a matter of law that the unwritten policy constitutes viewpoint discrimination.[11] The Court ruled only on the specific policies at issue; the Court did not address regulation of Airport advertising's content as a general proposition.

In support of its contention that the Court held unconstitutional all regulation of Airport advertising's content, Plaintiff relies on one paragraph in the Court's discussion of the unwritten policy, which is reproduced below:

> This is viewpoint discrimination. Of course, the City and Airport may advocate for Philadelphia, exercising full-throatedly their right to government speech. But they cannot create a forum for private speech and then exclude speakers they do not agree with. The City allows non-government actors to speak in the Airport as long as they toe the government's line. By stifling speech that the City dislikes, the City risks creating an environment where non-government speakers whistle in unison a happy, secretly government sanctioned tune. The First Amendment furthers our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open,' even when speech 'include[s] vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' The City's unwritten policy falls far short of that lofty goal.[12]

However, as its last sentence demonstrates, the paragraph addresses only the City's current unwritten policy. That a particular unwritten policy constitutes viewpoint discrimination does not mean that any future policy, written or unwritten, will also constitute an unconstitutional regulation of speech.

The Court concludes that the appropriate scope of the relief is, as Defendant argues, an injunction against enforcement of the unconstitutional provisions of the City's written and unwritten policies. Such relief comports with both the Court's summary judgment ruling and the injury identified by the Second Amended Complaint: the NAACP's inability to buy advertising

---

[10] *Id.* at 24, 27.
[11] *Id.* at 34.
[12] *Id.* at 34-35 (internal citation omitted).

space for its advertisements at the Airport.[13] Plaintiff does not appear to dispute that Defendant's proposed injunction redresses this injury. Although Plaintiff argues that the narrower injunction improperly leaves the City discretion to regulate the content of Airport advertising, regulation of Airport advertising's content, in the form of non-viewpoint discriminatory restrictions on access, may be within the City's rights.

This Court must also deny Plaintiff's requested injunctive relief because it does not meet the specificity requirement of Federal Rule of Civil Procedure 65(d)(1). Under the Rule, all injunctions must "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." The purpose of the Rule is to ensure that parties have fair notice of prohibited conduct.[14] "Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement, however, does not give the restrained party fair notice of what conduct will risk contempt."[15] Plaintiff's proposed injunction reaches beyond obeying the law to enjoin potentially constitutional content-based restrictions on access to Airport advertising and therefore does not comply with the requirements of Rule 65(d)(1).

*B. Declaratory Relief*

The parties also dispute the scope of declaratory relief. Plaintiff seeks a declaration that "the written and unwritten policies of Defendant City of Philadelphia (the "City") regulating the content of advertisements displayed at the Philadelphia International Airport (PHL)"[16] are unconstitutional, whereas Defendant's proposed declaration specifies that the policies at issue, i.e. "section 2(J)(a) of the City's Rules and Regulations for PHL (as revised on March 8, 2012)"

---

[13] Doc. No. 102 at ¶ 2.
[14] *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).
[15] *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994).
[16] Doc. No. 114-1.

and the "City's unwritten policy of rejecting advertisements that do not support PHL's mission" are unconstitutional.[17] Plaintiff's requested declaration, while technically correct, is too broad to provide useful guidance. Defendant's requested declaration will therefore be adopted.[18]

The Court will retain jurisdiction to enforce its order.[19] An appropriate order follows.

---

[17] Doc. No. 115 at 4.

[18] The parties' proposed orders also contain identical scheduling provisions with regard to attorney's fees. The Court finds these provisions reasonable and therefore adopts the agreed upon scheduling provision.

[19] *See In re Linerboard Antitrust Litigation*, 98-CIV-5055, 2008 WL 4461914 at *6 (E.D. Pa Oct. 3, 2008) (stating that when a district court enters final judgment, the court "'retains ancillary jurisdiction to manage its proceedings, vindicate its authority and effectuate its decrees.'") (quoting *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) (internal quotations and citation omitted)).